The **REALEX CHEMICAL CORPORATION, Appellee,**

v.

**S.C. JOHNSON & SON, INC., Appellant.**

**No. 87–1989.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1988.

Decided June 9, 1988.

Robert N. Newbury, Chicago, Ill., for appellant.

J. Roger Edgar, St. Louis, Mo., for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

S.C. Johnson & Son, Inc. (Johnson) appeals from an order of the district court granting the Realex Chemical Corporation (Realex) summary judgment on Johnson's three-count counterclaim of copyright infringement and unfair competition. We affirm in part and reverse in part.

## I. BACKGROUND

Realex produces three types of insecticide: (1) Ant & Roach Killer; (2) Wasp & Hornet Killer; and (3) House & Garden Spray. In a previous lawsuit (Suit I), Johnson alleged that Realex's Ant & Roach label infringed upon Johnson's copyright, and also, that distributing under that label was unfair competition.

The parties concluded a settlement agreement (Agreement) in order to end Suit I. The conflict over the Ant & Roach label was resolved in the Agreement at paragraph 2 as follows:

Realex * * * will change [its] label * * * to the form depicted in Exhibit E attached hereto and Johnson will not object to the use of that label. If Realex * * * make[s] any subsequent changes in [its] ant and roach insecticide label, the

changed label is not to be more similar to the label depicted in Exhibit A than is the label depicted in Exhibit E.

In paragraph 4, Realex undertook to make changes in its Wasp & Hornet label despite the fact that Suit I did not seek any relief with regard to that product.

Realex * * * will change [its] wasp and hornet insecticide label * * *. Realex * * * [has] represented that the red background in the cartouche will be changed from the color red and that the trademark 'Real Kill' will not appear in yellow. Johnson takes no position as to the propriety of the changes. Realex * * * will furnish the new can to Johnson.

Paragraph 8 recited the parties' intention that the Agreement be attached to the district court's order of dismissal with prejudice, and be enforceable by the court as a judgment of the court.

Realex made the changes to its Wasp & Hornet label specified in Paragraph 4. On September 29, 1986, Realex forwarded to Johnson the artwork for its new Wasp & Hornet label. On December 22, 1986, Johnson informed Realex that the label infringed upon its copyright. On January 9, 1987, Realex commenced the present action which seeks a declaratory judgment that its Wasp & Hornet label infringed no rights of Johnson and, additionally, that Johnson is in violation of the Agreement by continuing to assert that the new label constitutes copyright infringement.

Johnson counterclaims. Count I alleges that the new Wasp & Hornet label infringes upon Johnson's copyright. Count II alleges that Realex's use of the Wasp & Hornet label is unfair competition. Count III claims, for the first time, that Realex's House & Garden label is a source of unfair competition to Johnson's House & Garden product.

Realex filed a motion for summary judgment on Counts I and II. The district court granted the motion, 664 F.Supp. 450. The Court found that the Agreement permitted Realex to market its Wasp & Hornet spray under the newly designed label. The court also found that res judicata precludes John-son from claiming that the use of the Realex's label infringes upon its copyright or amounts to unfair competition. Summary judgment was also granted on Count III because the court believed that bringing this new infringement action on the House & Garden label is an impermissible splitting of causes of action.

Johnson raises two issues with regard to summary judgment on Counts I and II. First, Johnson argues that there were genuine issues of material fact as to whether Johnson intended to waive future objections to the Wasp & Hornet label despite Realex having made the changes agreed upon in Paragraph 4. Second, Johnson questions whether res judicata applies to matters which were the subject of the previous proceeding only insofar as they were part of a settlement agreement. Because we believe summary judgment was proper, based on the Agreement, we do not address the potential res judicata effects of the previous action.

## II. SETTLEMENT AGREEMENT

Summary judgment is appropriate if the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). On review, we apply the same substantive test and rules for the granting of summary judgment as does the district court in initially ruling on the motion. *Portis v. Folk Constr. Co.*, 694 F.2d 520, 522 (8th Cir. 1982).

### A. Ambiguity

Johnson's principal claim is that the language of Paragraph 4 in which Johnson took "no position as to the propriety of the changes" is ambiguous. As the nonmoving party, Johnson contends that the contract ambiguity must be construed in its favor in preservation of Johnson's rights to claim copyright infringement and unfair competition notwithstanding the fact that Realex made the changes required by Paragraph 4. Moreover, Johnson claims that the district court had an inadequate record on which to grant summary judgment because

the court had not yet considered extrinsic evidence purporting to show what Johnson intended Paragraph 4 to mean. We disagree with both arguments.

Initially, we do agree that Paragraph 4 is ambiguous inasmuch as the phrase at issue is subject to more than one meaning. However, since we do not believe that Paragraph 4 is reasonably susceptible to the meaning proposed by Johnson, we find that the trial court was not required to receive evidence in consideration of that particular meaning prior to deciding the motion for summary judgment.

The general rule is that interpretation of a contract is for the court. 4 Williston, Contracts, § 616, at 649 n. 7 (3d ed. 1961). Interpreting the plain language of a contract is a question of law. *Washington Metro Area Trans. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980). To the extent that a court can adequately construe an ambiguous phrase without resort to extrinsic evidence, the court is deciding a question of law. *Cf. id.* (stating that district court contract interpretation based solely on language used is subject to de novo review). A purported ambiguity does not automatically raise an issue of material fact. Indeed, for an unresolved ambiguity to constitute a genuine factual issue, we believe that the record as a whole must permit a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, where the relevant language would limit the range of inferences a factfinder could draw, *id.* at 588, 106 S.Ct. at 1357, and the record shows no factual basis under which the nonmoving party could prevail on the disputed issue, *see Whitfield v. Gangas*, 507 F.2d 880, 882–83 (10th Cir. 1974), there are no material factual issues sufficient to preclude summary judgment, *id.* at 883.

We have examined the language used in Paragraph 4 and have considered it in the context of the whole agreement. We believe that Johnson unambiguously waived any claims of copyright infringement or unfair competition against a Realex label that meets the conditions set forth in that paragraph. Despite the meanings to which the phrase "Johnson takes no position as to the propriety of the changes" may be susceptible, preservation of the rights alleged by Johnson is, unambiguously, not one of them.

This case is analogous to *Whitfield v. Gangas*, 507 F.2d 880, 882–83 (10th Cir. 1974). In *Whitfield*, the defendant sought to defeat summary judgment by asserting that he executed the contract at issue under duress. The court agreed that the circumstances surrounding execution were "significant." However, the undisputed facts of the case surrounding the execution prevented defendant from establishing duress whatever other facts defendant might have proved. Thus, summary judgment was proper. *Id.* at 883.

As Johnson admits in its counterclaim, Realex made the changes appropriate to producing a label without a red cartouche and without a yellow trademark. Thus, examining the Agreement as a whole and in the *undisputed* context in which the Agreement was concluded, one must find that once Realex made the changes agreed upon, it had the right to use the new label, unfettered by further claims from Johnson. It was a settlement agreement. Therefore, it is unlikely that Realex would agree to pay $30,000.00 in attorney fees and undertake to make specific label changes without a right to use the modified labels. Finally, if Johnson had wanted to preserve the rights asserted, it could have specifically done so very easily.

## B. Substantial Performance

Johnson further complains that Realex failed to furnish a can bearing the new label. Since Realex clearly breached this part of the Agreement, Johnson would deny Realex the benefit of the entire contract.

Realex furnished Johnson with the artwork for the new label on September 29, 1986. We believe that this was substantial performance of the Agreement. Substan-

tial performance occurs where less than full and exact performance is rendered, but where there is, nevertheless, sufficient performance to allow the breaching party the benefit of the bargain. Corbin, Contracts, § 702 at 316 & n. 10 (1960).

We believe that the policies underlying this doctrine warrant its application here. Substantial performance is not intended as a limit on the innocent party's recovery. Rather, it is intended as a defense to total forfeiture by a party who has rendered performance substantially in conformance with the purpose of the contract. *See id.* § 706 at 324 & n. 16. The availability of this defense encourages parties to tender substantial performance because it will ordinarily be, for both parties, more efficient and economical than a breach.

This doctrine benefits the innocent as well as the offending party. It furthers both parties' shared interest in minimizing the damages that a complete breach might cause. Thus, in the ideal case, a party will have received substantial performance yet suffered no damages, while the substantially performing party will have chosen to substantially perform because the cost is less than the cost of breach.

The purpose of furnishing a can was obviously to let Johnson know that the changes made were as promised. The purpose of the Agreement as a whole was to avoid future litigation. The submission of artwork had been adequate for working out a new label for the Ant and Roach Killer. If the changes as shown on the artwork were not as promised, presumably additional modifications could have been made without the expense of changing production line techniques. We see no reason to penalize Realex for performing in the most efficient manner while simultaneously tendering to Johnson the benefits it was entitled to under the Agreement. We, therefore, affirm the grant of summary judgment on Counts I and II of Johnson's counterclaim.

## III. COUNT III—HOUSE & GARDEN

Count III of Johnson's counterclaim alleges, *inter alia*, that Realex's House &

Garden insecticide label constituted unfair competition under the Lanham Act, 15 U.S. C. § 1125(a) and the common law. The district court ruled that Johnson "could and should have" resolved this claim in Suit I. Accordingly, it granted Realex summary judgment on Johnson's claim under a res judicata theory.

The court apparently believed that Suit I extinguished all potential infringement claims that Johnson might raise as to other Realex products. And, claim preclusion is one branch of the res judicata doctrine. *Chromalloy Amer. Corp. v. Kenneth Gordon,* 736 F.2d 694, 696–97 (Fed.Cir.1984).

The general rule as to this form of res judicata is that a final judgment on the merits bars further claims by parties based on the same cause of action. *Iowa Elec. Light & Power v. Mobile Aerial Towers,* 723 F.2d 50, 52 (8th Cir.1983). Assuming that the Agreement was a "final judgment," *see Chromalloy Amer. Corp.,* 736 F.2d at 697, the question is whether Johnson's Count III is a further claim based on the same cause of action. We think not.

Johnson's claim asserts that a different product unfairly competes through use of a different label. Thus, recovery is sought for a different wrong. Johnson's new claim in no way seeks recovery for harm caused by the Ant & Roach or Wasp & Hornet labels. Thus, for example, this case is unlike *Gatzemeyer v. Vogel,* 589 F.2d 360, 362 (8th Cir.1978) where after losing a contract action, the plaintiff sought recovery under the same transaction, but for alleged tortious misrepresentation. *Id.*

Here, while the theory of recovery, *i.e.,* infringement under the Lanham Act may be the same, the basis for plaintiff's claim is completely different—a newly designed label used on an entirely different product. We, therefore, reverse the district court order as to Count III and remand for further proceedings.

## IV. CONCLUSION

Accordingly, the district court's grant of summary judgment on Realex's complaint

and on Johnson's first two counterclaims to Realex is affirmed. The court's order granting summary judgment to Realex on Johnson's Count III is reversed and remanded.