UNITED STATES of America, Appellee,

v.

Eleazer LOPEZ, aka "LaChe," Richard Sotero, aka "Richie," aka "Richard Martinez," Alexis Flores, aka "Alex," Jose Martinez, aka "J.J," David Santiago, J.B. Aviles, Clifton A. Jackson, aka "Pooh," Miguel Bobe, aka "Mike," Ricky James Nicholopolous, Defendants,

Jesus R. Rivera, Jr., Defendant–Appellant.

No. 02–1609.

United States Court of Appeals, Second Circuit.

Argued: Sept. 15, 2003.

Decided: Jan. 29, 2004.

---

Thomas Duszkiewicz, Assistant United States Attorney, Buffalo, NY, for Appellee (Michael A. Battle, United States Attorney for the Western District of New York, on the brief).

Matthew M. Robinson, Robinson & Brandt, P.S.C., Cincinnati, OH, for Defendant–Appellant (Jeffrey M. Brandt, on the brief).

Before: LEVAL and SACK, Circuit Judges, and KORMAN, District Judge.*

PER CURIAM.

Jesus Rivera, Jr. has twice been indicted for conspiracy to possess with the intent to distribute cocaine in the Western District of New York, and has twice pleaded guilty. He appeals from the second conviction on the ground that it violated his right not to be placed twice in jeopardy for the same offense. We agree that the Double Jeopardy Clause was violated and vacate the judgment of conviction.

## BACKGROUND

On April 21, 1995, Jesus Rivera, Jr. was charged in a three-count indictment with conspiring to possess with the intent to distribute and to distribute five kilograms or more of a substance containing cocaine. Specifically, Count I of the indictment charged that between April 7, 1995, and April 11, 1995, Mr. Rivera conspired with co-conspirators Eleazer Lopez, Lamont Richie and others, known and unknown, in the Western District of New York and elsewhere, "to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture or substance containing cocaine, a Schedule II controlled sub-

---

stance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846." Indictment, dated April 21, 1995, at 1–2. Count II charged that on April 11, 1995, the same named individuals attempted to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing cocaine, the object of the conspiracy charged in Count I. Count III charged them with violating 21 U.S.C. § 843(b) and 18 U.S.C. § 2 by using the mail to facilitate acts constituting felonies set forth in Counts I and II.

In May of 1997, a superseding information was filed with respect to Count I of the 1995 indictment. The superseding information narrowed the time frame of the charged conspiracy and lessened the amount of cocaine involved, eliminating the ten-year mandatory minimum sentence that otherwise would have been applicable. 21 U.S.C. § 841(b)(1)(A). The information read as follows:

> On or about April 11, 1995, at Buffalo, New York, in the Western District of New York and elsewhere, the defendant, JESUS RIVERA, JR., did knowingly, willfully and unlawfully combine, conspire and agree with Lamont Richie, Eleazer Lopez and others, known and unknown, to commit offenses against the United States, that is, to possess with intent to distribute, and to distribute 500 grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); all in violation of Title 21, United States Code, Section 846.

Superseding Information, dated May 13, 1997.

On May 16, 1997, defendant pleaded guilty to the one-count superseding information in United States District Court for the Western District of New York before Judge Arcara. The plea agreement set forth the following factual basis for the plea:

> On or about April 11, 1995, at Buffalo, New York, in the Western District of New York, the defendant, JESUS RIVERA, JR., did knowingly, willfully and unlawfully combine, conspire and agree together with LAMONT RICHIE, ELEAZER LOPEZ and others, known and unknown, to possess with intent to distribute and to distribute 6 kilograms of cocaine, a Schedule II controlled substance.

Plea Agreement, dated May 16, 1997, at 3. Mr. Rivera conceded that he had received the approximately six kilograms of cocaine from a source in Puerto Rico and intended to distribute it in the Buffalo region. On August 21, 1997, Judge Arcara sentenced him to a term of imprisonment for a period of 90 months, supervised release for five years, and a special assessment of $50. While the superseding information charged that he had conspired to possess as little as 500 grams or more of cocaine, based on his admission of relevant conduct and consistent with the original indictment, Mr. Rivera was sentenced pursuant to the United States Sentencing Guidelines as if he had conspired to possess 5–15 kilograms of cocaine. Mr. Rivera surrendered to the Bureau of Prisons on October 17, 1997.

Nine months later, on July 16, 1998, a newly empaneled grand jury issued a multi-count indictment against Mr. Rivera and eight alleged co-conspirators, initiating the charge upon which this appeal is taken. The indictment was based on an investigation that preceded the plea of guilty on May 16, 1997. A superseding indictment was returned on February 25, 1999.

The superseding indictment contains 41 separate counts and names ten defendants. Count 1 states:

Between on or about the 1st day of April, 1993, and on or about the 30th day of June, 1997, in the Western District of New York and elsewhere, the defendants, JESUS R. RIVERA, JR., a/k/a Junito, ELEAZER LOPEZ a/k/a "LaChe", RICHARD SOTERO a/k/a Richie, ALEXIS FLORES a/k/a Alex, JOSE MARTINEZ a/k/a J.J., DAVID SANTIAGO, J.B. AVILES, CLIFTON A. JACKSON a/k/a Pooh, MIGUEL BOBE a/k/a Mike and RICKY JAMES NICHOLOPOLOUS, did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown, to commit offenses against the United States, that is, to possess with intent to distribute and distribute 5 kilograms or more of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846.

Superseding Indictment, dated February 25, 1999, at 2.

On June 21, 2001, Mr. Rivera filed a motion to dismiss the superseding indictment based on the Double Jeopardy Clause. He argued that "the conspiracy to which [he] pleaded guilty in the 1995 case and the conspiracy charged in [the second] case is not just similar, it's the exact same." Tr. of proceedings, dated March 1, 2002, at 12. Indeed, he argued:

The only difference objectively is time. By the time the government submitted evidence to the grand jury in 1998, it simply knew more about this case. It knew more people. It knew more sources. It knew more information. The 1995 case was the beginning of the conspiracy, the part the government knew early on. The 1998 case [is] just the rest of the story, the same story, that single conspiracy.

*Id.* at 12–13. Judge Elfvin heard oral argument on defendant's double jeopardy motion on March 1, 2002, but did not make a final determination on defendant's motion at that time. Rather, he deemed the matter submitted and proceeded to set a date for jury selection to begin.

When the parties reconvened to begin jury selection, the Assistant United States Attorney reminded Judge Elfvin of the pending motion. Judge Elfvin responded: "As far as double jeopardy, there is, ·of course, the other case that was on before Judge Arcara. I can only say that, as far as this jury is concerned, there will be nothing that will be adduced as evidence which would constitute double jeopardy. I will have to take that step by step as we go [a]long." Tr. of motion decision and plea, dated June 10, 2002, at 2–3. Later he explained further: "I had decided there is not double jeopardy[. I]t might well be in the course of the trial that there might be some factors [which] come out that might rub too closely against the other case, and we would contain that evidence, so there would not be double jeopardy in this case." *Id.* at 12. After the decision on his double jeopardy motion, Mr. Rivera decided to plead guilty to Count 1 of the superseding indictment, and Judge Elfvin accepted his plea on June 10, 2002.

· The plea agreement described the relevant conduct that formed the factual basis for the plea as follows:

a. Between on or about April 1, 1993 and on or about June 30, 1997, the defendant conspired with Richard Sotero, Eleazer Lopez, and others, to possess with intent to distribute and distributed various quantities of cocaine *which includes the approximately 5,966 grams of cocaine seized on April 10, 1995 which had arrived from Puerto Rico* as well as Defendant's continued possession and

distribution of cocaine with Sotero, Alexis Flores, James Castro and with others.

b. [B]etween approximately 50 and 150 kilograms of cocaine is the amount involved in the defendant's relevant conduct encompassed in Count 1 of the Superseding Indictment which could be readily proven by the government at trial against the defendant.

Plea agreement, dated June 10, 2002, at 3. The italicized clause refers to the transaction that formed the basis of the earlier prosecution. The plea agreement waived Mr. Rivera's right to appeal or collaterally attack his sentence provided that the sentence imposed fell within the Sentencing Guidelines range set forth in the agreement. But the agreement explicitly reserved Mr. Rivera's right to appeal the denial of his motion to dismiss based on the Double Jeopardy Clause.

Judge Elfvin sentenced Mr. Rivera to a term of imprisonment for a period of 235 months, a period of supervised release for a term of five years, and a special assessment of $100. He ordered that Mr. Rivera's sentence run concurrently with the remainder of the sentence he was serving pursuant to his prior guilty plea. He did not adjust the sentence for the "period of imprisonment already served on the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b). This omission provides the second ground for Mr. Rivera's appeal.

## DISCUSSION

■ There are three prongs to the protection provided by the Double Jeopardy Clause. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656

(1969). Its primary purpose is to ensure "that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Ohio v. Johnson*, 467 U.S. 493, 498–99, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984).

■ We have long recognized "the ease with which prosecutors can draft indictments that allege what appear to be separate conspiracies but may actually be parts of an overall conspiracy." *United States v. Abbamonte*, 759 F.2d 1065, 1068 (2d Cir. 1985). To guard against this danger, we have held that, if a defendant makes a non-frivolous showing that two indictments in fact charge only one conspiracy, the burden shifts to the prosecution to show, by a preponderance of the evidence, that there are in fact two distinct conspiracies and that the defendant is not being placed in jeopardy twice for the same crime. *See United States v. DelVecchio*, 800 F.2d 21, 22 (2d Cir.1986); *United States v. Mallah*, 503 F.2d 971, 985–86 (2d Cir.1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

■ In the context of successive conspiracy prosecutions, the relevant double jeopardy inquiry is "simply whether the second prosecution is for a conspiracy distinct from that previously prosecuted." *United States v. Gambino*, 968 F.2d 227, 231 (2d Cir.1992). "If the second prosecution is for a distinct conspiracy, there is no double jeopardy regardless of an overt act or other evidentiary overlap." *Id.* In *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985) (per curiam), we "identified a number of factors as relevant to the task of individuating conspiracies," the factors being,

(1) [T]he criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Id.* at 662; *see United States v. Macchia,* 35 F.3d 662, 667–68 (2d Cir.1994) (reaffirming the *Korfant* factors).

■ Turning to the facts of this case, we consider the superseding indictment, filed in 1998, that is the subject of this appeal. As noted above, the superseding indictment charges Mr. Rivera with conspiring with at least nine other defendants to possess with the intent to distribute and to distribute cocaine between April 1, 1993 and June 30, 1997. The indictment neither defines the bounds of the conspiracy nor specifies how the conspiracy allegedly operated.

The United States Attorney contends that Mr. Rivera's first conspiracy conviction was "solely directed at the possession and attempted possession" by defendant Rivera, Eleazer Lopez, and Lamont Richie of just under six kilograms of cocaine mailed from Puerto Rico and arriving on April 11, 1995. Appellee's Br., at 15. The second conspiracy, on the other hand, is said to have been wholly separate and distinct from Mr. Rivera's one-time agreement to procure cocaine from Puerto Rico. The United States Attorney argues that after Mr. Rivera's first arrest, he was no longer able to obtain cocaine from his Puerto Rico source and had to change his methods. It was arranged for Sotero, who had been Rivera's customer, to become his supplier. Rivera also began to use new suppliers Raille Betances, James Castro and Dennis Durante. Through these different connections, Mr. Rivera and others possessed cocaine between September 12, 1996 and September 16, 1996, and used telephones and digital pagers to facilitate drug trafficking between October 8, 1996 and March 16, 1997. In sum, the United States Attorney argues that "what should be apparent is that the defendant chose simultaneously or successively to commit the same type of crime by availing himself of two distinct criminal opportunities with which he was presented." *Id.* at 16.

Mr. Rivera contends that the first conspiracy to obtain cocaine from Puerto Rico was no more than a smaller description of the broader conspiracy with which he was later charged:

The first charge alleged just a small picture of the conspiracy, picking just a small window of time, listing just a few of the participants, noting just one of the drug sources, pressing for sentence based upon just a small fraction of the drugs that were involved. In the second charge, the government simply broadened the time, brought in many more of the participants, alleged another of the drug sources, and detailed the other drug amounts.

Appellant's Br., at 2. Mr. Rivera admits that, from April 1993 to February 1997, he and others, named and unnamed in the indictments, "obtained cocaine from several sources and distributed that cocaine in the Buffalo region." *Id.* at 11. Early in the conspiracy, Rivera acted as a source of cocaine by procuring drugs from Puerto Rico. Later, he acted as a middleman. He contends, however, that all of the activity was pursuant to the same agreement to possess and distribute cocaine in the Buffalo area from whatever sources were available.

Because the superseding indictment was itself so malleable and imprecise, it provides little assistance in determining whose

vision of the conduct underlying the indictment is closer to the truth. The superseding indictment could have supported an argument that Mr. Rivera entered two separate agreements: the first an agreement with Eleazer Lopez and Lamont Richie to buy cocaine from a specific supplier in Puerto Rico and distribute it in Buffalo; the second, a broader agreement with Lopez, Richard Sotero, Alexis Flores, Jose Martinez, David Santiago, J.B. Aviles, Clifton Jackson, Miguel Bobe, and Ricky Nicholopolous to buy cocaine from other sources and distribute it in Buffalo. The indictment also could have supported an argument that there was one conspiracy to purchase cocaine and another conspiracy related solely to the sale of cocaine. And it could have supported an argument that there was one overarching conspiracy to profit from the purchase and sale of cocaine. Indeed, it could have supported nearly any combination of agreements.

Mr. Rivera has successfully made "a non-frivolous showing on a double jeopardy claim that the two conspiracies under review are not distinct, [and thus] the burden shifts to the Government to prove by a preponderance of the evidence that the conspiracies are separate." *United States v. Estrada,* 320 F.3d 173, 181 (2d Cir. 2003). And the Government's stipulation as to the factual basis for Mr. Rivera's second guilty plea, as set forth in his plea agreement, makes it impossible to accept the Government's characterization of the second conspiracy. In view of the stipulation that the second conspiracy involved the six kilograms of cocaine received from Puerto Rico, the Government cannot meet its burden of proof to show that the second conspiracy was distinct from the first, at least without a demonstration of why a second independent conspiracy replaced the first with respect to the same drugs. The Government has offered no such explanation. It has merely asserted that the second conspiracy did not involve a Puerto Rico source, an assertion that is directly contradicted by the Government's stipulation. We have no choice but to conclude that Mr. Rivera was twice prosecuted for the crime of conspiring on or about April 10, 1995, with Eleazer Lopez and others, to possess with intent to distribute and to distribute, the six kilograms of cocaine obtained from Puerto Rico. Because the stipulation reveals indisputably that the second charged conspiracy included the conspiracy for which Mr. Rivera had already been convicted, we have no need to examine laboriously the *Korfant* factors, which can lead to only one conclusion.

Also, because we vacate the judgment of conviction, it is unnecessary for us to address Mr. Rivera's claim that the trial judge failed to fully comply with U.S.S.G. § 5G1.3(b) when he imposed sentence. Nor need we address Mr. Rivera's claim that the trial judge misapplied the safety valve of U.S.S.G. § 5C1.2. Finally, we express no view on the question of whether Mr. Rivera may be reindicted for conspiratorial conduct that was not covered by his prior conviction.

The judgment of conviction is vacated and the case is remanded to the district court with instructions to dismiss the conspiracy count to which the defendant pleaded guilty.