In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 07-1962, 07-1969

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANK J. CALABRESE, SR., and JAMES MARCELLO,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 1050—**James B. Zagel**, *Judge.*

_____

ARGUED MAY 29, 2007—DECIDED JUNE 12, 2007

_____

Before POSNER, WOOD, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.*   Two defendants in a pending
RICO prosecution for conspiracy to conduct an enter-
prise's affairs through a pattern of racketeering activity,
18 U.S.C. § 1962(d), appeal from the denial of their mo-
tion to dismiss the indictment. They contend that the trial,
scheduled to begin on June 19, will place them in double
jeopardy.

Marcello's claim is based on a 1992 indictment charging
him and eight others with conspiring to conduct the
affairs of the Carlisi Street Crew by means of numerous

illegal acts between 1979 and 1990—acts such as extortion, intimidation, arson, conspiracy to commit murder, usury, witness tampering, and efforts to collect unlawful gambling debts. Such acts, if proved, are "predicate acts" two or more of which establish the "pattern of racketeering activity" required for a violation of RICO. Marcello was convicted in 1993 and sentenced to 150 months in prison, and his conviction was affirmed in *United States v. Zizzo*, 120 F.3d 1338 (7th Cir. 1997). Calabrese, the other appellant, was charged in a 1995 indictment, together with six others, with participation in a similar conspiracy, though the offense period was 1978 through 1992 and the enterprise was a different street crew—the Calabrese Street Crew. Calabrese pleaded guilty in 1997 and was sentenced to 118 months in prison. He did not appeal.

The two street crews are components of the "Chicago Outfit," the lineal descendant of Al Capone's gang, http://en.wikipedia.org/wiki/Chicago_Outfit (visited June 1, 2007). The new indictment charges our two defendants, along with seven others only one of whom was a defendant in the previous prosecutions, with conspiring to conduct the affairs of the Chicago Outfit itself through a pattern of racketeering activity. The offense period runs from the 1960s to 2005 and thus overlaps the periods of the conspiracies with which Calabrese and Marcello had previously been charged. The predicate acts alleged include some of the criminal acts charged in the earlier indictments but also a number of criminal acts that were not charged, including many murders, usurious loans, incidents of witness tampering and other obstructions of justice, and travel in interstate commerce for the purpose of accomplishing the Outfit's criminal objectives. Some of the predicate acts occurred after the offense

periods charged in the earlier prosecutions, but others occurred before or during those periods.

The purpose of the Fifth Amendment's double jeopardy clause is to prevent the government from harassing people by prosecuting them for the same conduct that was the subject of a prior prosecution. The purpose is most strongly engaged when the prior prosecution resulted in an acquittal; for then, were it not for the double jeopardy defense, the government could keep retrying the defendant until a jury convicted him—with enough throws of a pair of dice the desired combination is bound to appear eventually. Even when the initial prosecution is successful, allowing the government to prosecute the defendant again for the same crime, perhaps long after he has been released from prison, would result in punishment beyond what the law allows. For even if the defendant received the same sentence and it was made to run concurrently with the sentence imposed in the first prosecution, he would have been subjected to the burden of a second trial. That is why our two defendants can appeal from the denial of their motion to dismiss the indictment rather than having to wait until conviction and sentence to appeal. *Abney v. United States*, 431 U.S. 651, 659-62 (1977); *Green v. United States*, 355 U.S. 184, 187-88 (1957). "The burden of a second trial is one of the harms that the double-jeopardy clause is intended to prevent, and [it is] a harm that (unlike the harm of conviction) is irreparable once the second trial has been conducted." *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 410 (7th Cir. 1985).

The government may not bring a second prosecution under a statute the elements of which are included in the elements of the statute under which the defendant was previously prosecuted. *United States v. Dixon*, 509 U.S. 688,

696 (1993); *United States v. Olmeda*, 461 F.3d 271, 278, 292 (2d Cir. 2006); see *Rutledge v. United States*, 517 U.S. 292, 297-98 (1996); *Blockburger v. United States*, 284 U.S. 299, 303-04 (1932). And so it may not, for example, charge him in the second prosecution with having attempted to murder someone, when in the first case he had been charged with murdering the person. Cf. *United States v. Luskin*, 926 F.2d 372, 377-78 (4th Cir. 1991). For the proof that the government would have had to present to establish his guilt of murder would, without more, establish attempted murder as well.

This case is different because the statutory offense charged is the same one as in the previous prosecutions, and the question is simply how great a difference there is between the conduct charged in the previous prosecutions and in the present one. As regards the predicate acts charged in the present indictment that occurred after the offense periods in the earlier ones, there can be no question of double jeopardy. For those acts show that the defendants continued conspiring after the previous prosecution. And there is no suggestion that the government, knowing that the defendants were continuing to engage in criminal acts up to the date of their arrests or indictments, backdated the offense periods so that if the prosecutions failed the defendants could be prosecuted on the basis of acts they committed after those offense periods. The double jeopardy clause deprives the prosecution "of an opportunity . . . to supply evidence at a successive trial that it failed to present the first time around." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). Otherwise there would be "concern that the government may be free to pursue successive prosecutions under RICO by merely alleging two predicate acts—sufficient to establish a

pattern of racketeering activity under 18 U.S.C. § 1961(5)—and, by holding in reserve other predicate acts, bring future RICO prosecutions against participants in the same enterprise." *United States v. Russotti*, 717 F.2d 27, 34 (2d Cir. 1983).

The concern of the defendants in this case is different. It is that some of the predicate acts in the new indictment were predicate acts in the old ones. And so the defendants ask us, if we are unwilling to order the entire indictment thrown out, at least to order it trimmed to eliminate the overlap.

The argument misunderstands the actual charge in the indictment. The defendants are not being charged with murder, or arson, or intimidation, etc. They are being charged with participating in a conspiracy to operate an enterprise by means of criminal acts that include murder, arson, intimidation, etc. The enterprise is the Chicago Outfit, and insofar as is known at this time, it is a different enterprise from the Carlisi and Calabrese street crews. *United States v. Langella*, 804 F.2d 185, 189 (2d Cir. 1986). Were it the same enterprise, we would have a different case. *United States v. DeCologero*, 364 F.3d 12, 17-18 (1st Cir. 2004). But it is not, and that is critical.

To illustrate, suppose the defendants were officers of a corporation and also members of the board of directors of a wholly owned subsidiary of the corporation, and they agreed to conduct the affairs of the wholly owned subsidiary through a pattern of racketeering activity and the affairs of the parent corporation through a pattern of racketeering activity as well. These would be different conspiracies and hence different crimes even if the acts constituting the pattern of racketeering activity over-lapped. See *id.* at 18; *United States v. Ciancaglini*, 858 F.2d

923, 928 (3d Cir. 1988); *United States v. Langella*, *supra*, 804 F.2d at 188-90; *United States v. Ruggiero*, 754 F.2d 927, 934 n. 15 (11th Cir. 1985). Prosecutors often have a choice between charging a single conspiracy or multiple conspiracies when dealing with members of a loose-knit, reticulated criminal enterprise. E.g., *United States v. Reiter*, 848 F.2d 336, 340-41 (2d Cir. 1988); *United States v. Ingman*, 541 F.2d 1329, 1330-31 (9th Cir. 1976) (per curiam). What the government may not do is "reprosecute a defendant *for the same offense* whenever it obtains broader evidence of criminal culpability." *United States v. Thornton*, 972 F.2d 764, 765 (1992) (emphasis added). But the two conspiracies in this case are two separate offenses.

Even if the predicate acts in the previous and present prosecutions were identical and the enterprises were under common control, separate prosecutions might not be barred. If a defendant drives two of his friends to an intersection where there are two banks, and each friend robs one of the banks, the driver could be prosecuted twice for two different offenses of aiding and abetting bank robbery, even though he drove only once. For he would have committed two separate offenses, and in *United States v. Dixon*, *supra*, 509 U.S. 704, the Supreme Court made clear that that is the test. See also *United States v. Hatchett*, 245 F.3d 625, 639-40 (7th Cir. 2001). Or suppose in our hypothetical corporate example that the defendants, having been prosecuted for conducting the affairs of the subsidiary by a pattern of racketeering activity, were prosecuted a second time on the theory that by that very conduct they had enriched the parent and so had conducted its affairs as well through a pattern—albeit the same pattern—of racketeering activity. The offenses would not be the same; the second would require proof

that the first had not required. *United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005); see *United States v. Dixon*, *supra*, 509 U.S. at 700-02; *United States v. Hatchett*, *supra*, 245 F.3d at 639-40. It would be just like our hypothetical robbery case. In this case the defendants are not only charged with a different conspiracy from what was charged in their previous prosecutions, but also charged with having conspired to conduct the affairs of the parent (the Outfit) by acts that are not identical to the acts charged in the first set of prosecutions, though there is overlap. *United States v. Ciancaglini*, *supra*, 858 F.2d at 925-26.

Corporate analogies are appropriate because the Chicago Outfit is a substantial commercial firm, albeit an illegal one (yet it has outlasted many a legal firm). Of course, being an illegal enterprise, it cannot have formal subsidiaries, but if the street crews are functional subsidiaries, that should suffice for purposes of analyzing a double jeopardy defense. It would be beyond paradoxical if by virtue of their employers' being forbidden by law to form subsidiaries, the employees of criminal enterprises obtained broader rights under the double jeopardy clause than the employees of legal ones.

Civil analogies are also appropriate, given the resemblance between double jeopardy and res judicata. Imagine, then, successive suits for copyright infringement. The first is against the publisher of an abridged book that copies passages from the plaintiff's copyrighted work, and the suit names the publisher's employee who did the actual copying as an additional defendant. The second suit complains about an unabridged edition of the same book, which copies those passages plus others and which was published at the same time as the abridged edition but by the parent of the publisher of that edition, and

names the same employee as an additional defendant because he either is employed by both the parent and the subsidiary or moved between them, copying the plaintiff's work for the editions published by his successive employers. The second claim against the employee would not be barred by res judicata despite the overlap, cf. *Realex Chemical Corp. v. S.C. Johnson & Son, Inc.*, 849 F.2d 299, 303 (8th Cir. 1988), and the same thing is true in this case with respect to double jeopardy.

As the overlap between two prosecutions of the same person grows, however, the characterization of the two proceedings as charging separate criminal acts becomes less convincing. Finally a point is reached at which the differences are minor and it seems that the government contrived the differences to evade the prohibition against placing a person in double jeopardy. For while the government is not required to charge in its first prosecution of a person all the possible offenses that the facts in the government's possession would enable it to charge (as in our robbery case), *United States v. Dixon*, *supra*, 509 U.S. at 704-05, it can still be precluded from bringing "a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts." *Id.* at 705; see *United States v. DeCologero*, *supra*, 364 F.3d at 18; *United States v. Lopez*, 356 F.3d 463, 467 (2d Cir. 2004) (per curiam); *United States v. Ciancaglini*, *supra*, 858 F.2d at 930. But we are not at that point in this case, and this apart from the fact that the government did not lose the previous cases.

At least we are not at that point yet. For suppose that at the trial of the defendants under the new indictment the only predicate acts the government is able to prove are the acts that it proved against Marcello in its first

prosecution of him and that Calabrese acknowledged as part of his guilty plea in *his* first prosecution, and the government's defense to the claim of double jeopardy is merely that when the two defendants were committing illegal acts on behalf of their respective street crews, they were simultaneously committing those acts on behalf of the Outfit, the crews' parent. That would be a merely formal difference (like saying they were committing the acts on behalf of their families, whom they hoped to enrich) between the successive prosecutions, unless the government went on to prove that the later conspiracy had as an objective not involved in the earlier conspiracies to enrich or otherwise advance objectives of the Outfit that were distinct from the objectives of the street crews. But the appeals are from the denial of the motion to dismiss the indictment, not from judgment after trial. We have no basis at this preliminary stage for thinking that the government will fail to prove separate conspiracies. *United States v. Flick*, 716 F.2d 735, 738-39 (9th Cir. 1983).

It will be a more difficult case if the evidence presented by the government at the new trial differs only trivially from the evidence upon which Calabrese's and Marcello's previous convictions were based. (This is conceivable because the five-year statute of limitations applicable to RICO prosecutions, 18 U.S.C. § 3282; *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 155-56 (1987), does not bar conviction for a RICO conspiracy involving predicate acts committed more than five years before the prosecution was commenced, provided the conspiracy continued into the limitations period. E.g., *United States v. Yashar*, 166 F.3d 873, 875-76 (7th Cir. 1999); *United States v. Gonzalez*, 921 F.2d 1530, 1547-48 (11th Cir. 1991); *United States v. Bortnovsky*, 879 F.2d 30, 36 n. 11 (2d Cir. 1989).)

With the tail thus wagging the dog, a conviction would be in jeopardy of placing the defendants in double jeopardy, a conclusion that many cases would reach by application of a five-factor or "totality of the circumstances" test that amounts to asking how much the two prosecutions overlap. E.g., *United States v. Sertich*, 95 F.3d 520, 524 and n. 1 (7th Cir. 1996); *United States v. Ciancaglini, supra*, 858 F.2d at 927; *United States v. Russotti, supra*, 717 F.2d at 32-34 (2d Cir. 1983). At this stage, we cannot know how great the overlap will be, and so we have no basis for forbidding the trial to go forward. But "if it becomes clear from the trial that [the defendant] is being prosecuted twice for the same conspiracy, he is free to raise such arguments after trial if he is convicted on the RICO conspiracy count." *United States v. Solano*, 605 F.2d 1141, 1145 (9th Cir. 1979); see also *United States v. Flick, supra*, 716 F.2d at 738; *United States v. Stricklin*, 591 F.2d 1112, 1119 (5th Cir. 1979); *United States v. Young*, 503 F.2d 1072, 1077 n. 17 (3d Cir. 1974). All three of the judges on this panel agree that the defendants must stand trial again; the incremental burden of their having to litigate with reference to some acts that may have been involved in the earlier prosecutions is therefore likely to be modest.

AFFIRMED.

WOOD, *Circuit Judge,* concurring in part and dissenting in part. Fifteen years and twelve years ago respectively, James Marcello and Frank Calabrese, Sr., were indicted under the Racketeer Influenced and Corrupt Organiza-

tions Act, 18 U.S.C. § 1962(d), for conspiring to engage in a pattern of racketeering activity through an enterprise. The enterprise in question for Marcello was the "Carlisi Street Crew," which was specifically alleged to be "part of a larger criminal organization known as 'the mob' or 'the Outfit.'" Paragraph 4 of the indictment charged that "the 'boss' of the Crew was ultimately responsible to the head of the Outfit and was required to ensure that the leadership of the Outfit received a share of the proceeds from the Crew's activities." Paragraph 5(b) went on to allege that Marcello served as a go-between for Samuel Carlisi, the head of the Crew, and representatives of other Chicago "Outfit" street crews. In short, the 1992 indictment made it clear that the criminal organization with which Marcello was associated was part and parcel of the Chicago Outfit. The same picture emerges from the 1995 indictment against Calabrese. It, too, asserts in paragraph 1 that "[t]he Calabrese Street Crew was part of a larger criminal organization known to the public as 'the Mob,' and to its members and associates as 'The Outfit.'" Frank Calabrese, Sr., according to paragraph 3(a) of the indictment, "resolved disputes both within the Calabrese Street Crew and between that crew and other organized crime street crews," and he "represented the Calabrese Street Crew in meetings with members of other organized crime crews."

In the indictment now before us, both Marcello and Calabrese have been charged once again with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). This time, the alleged "enterprise" is the Outfit itself, rather than any of its constituent parts. There is also a temporal difference between the Second Superseding Indictment before us, which was returned by the Special August 2003-

2 Grand Jury on June 2, 2005, and the earlier two indictments. It covers more than forty years, "[f]rom approximately the middle of the 1960s through the date of the return of this indictment." Marcello's earlier indictment spanned the time period from approximately 1979 through "at least" May 1990, and Calabrese's specified the period from 1978 through April of 1992. Finally, although (as the government concedes) some of the predicate acts supporting the RICO charge are the same as the ones alleged in the two men's earlier indictments, the 2005 indictment asserts many more.

In the interest of a prompt decision in this case, I do not wish to belabor the points I am making here. In brief, however, I do agree with the majority in one significant respect. As they note, *ante* at 4, there can be no question of double jeopardy for acts that took place as part of the continuation of the conspiracy after the time periods covered by the earlier indictments. No matter what, therefore, these defendants are not entitled to avoid altogether the trial that is scheduled to begin soon. The more difficult question is whether the government is entitled to rely on predicate acts that were committed during the time periods for which Marcello and Calabrese have already stood trial and been convicted, whether or not those acts were identified earlier as support for the earlier RICO conspiracies. The defendants are correct to emphasize, in this connection, that they were found guilty (by jury and by plea) of conducting a RICO conspiracy, not of committing a series of discrete criminal acts. They freely concede that there would be no double jeopardy problem if the government wanted to indict them for the substantive crimes reflected in many of the predicate acts, such as murder, money laundering, or fraud.

The majority, by drawing analogies to corporate governance models and the law of copyright, is satisfied that the conspiracy in the present case is not quite the same as the conspiracy charged in the earlier cases. It is willing to give the defendants half a loaf with respect to their double jeopardy defense, by inviting them to renew this motion *after* trial if it turns out that they have been convicted on the basis of evidence that has been recycled from the earlier trials. But, as the majority rightly notes, the Fifth Amendment protects people from twice having to stand trial for a given offense. See *Abney v. United States*, 431 U.S. 651 (1977). It is not limited to an *ex post* vindication at the end of a trial.

Perhaps the majority's analogies would be apt, if it were clear that the focus earlier had been exclusively on actions taken respectively by the Carlisi Street Crew and the Calabrese Street Crew. But the earlier indictments show that the charges encompassed the role that the two crews were playing in the larger Chicago Outfit—precisely the enterprise that is alleged in this new case. In *United States v. DeCologero*, 364 F.3d 12, 17-18 (1st Cir. 2004), the court explicitly refused to conclude that enterprises resembling those charged in this case were distinct:

> The present indictment charges the defendants with participating in a nominally different enterprise—the "DeCologero Crew"—said by the government to be "a separate entity from the Patriarca La Cosa Nostra ('LCN') Family, yet . . . structured in a similar manner to a crew or regime of La Cosa Nostra" and "aligned with" the Carrozza faction of the Patriarca Family. According to the charge, the DeCologero Crew's aim was "controlling, supervising, and financing illegal activities," including generating money through

robbery and drug sales "for the personal use of members . . . and to build up a war chest of firearms, weapons, and ammunition which was to be used, in part, to support the" Carrozza faction.

If the double jeopardy problem turned solely on whether the two cases involved the same enterprise, we would be faced with a hard question. The RICO statute loosely defines an "enterprise" to include not only any legal entity (*e.g.*, a corporation) but also "any union or group of individuals associated in fact." 18 U.S.C. § 1961(4). Although the DeCologero indictment alleges that the Carrozza faction and DeCologero crew were separate enterprises, the proffered evidence could support the view that both were part of a vertically organized endeavor, with DeCologero somewhere in the middle of the organizational pyramid.

Past cases have stressed that conspiracies cannot be artificially broken up for the purpose of bringing separate cases, see *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942), and there is no reason why the rule should be any different for RICO enterprises. But whether there was one enterprise or two need not be resolved. Every circuit to have examined the issue has agreed that double jeopardy only bars successive RICO charges involving both the same enterprise *and* the same pattern of racketeering activity. In our view the current RICO charges do involve a different pattern than the old.

*Id.* See also *United States v. Ciancaglini*, 858 F.2d 923, 929 (3d Cir. 1988) ("Because of the overlap, however, we are unable to conclude that this was not the same 'enterprise.' Both indictments involved Philadelphia-based crime families, and both alleged enterprises with the same goal."). The

*DeCologero* court thus ultimately found no double jeopardy problem, but only because "*all* of the [racketeering acts] in the present indictment are different from those charged in the [previous] case." *Id.* at 19 (emphasis in original).

The majority and the government also cite *United States v. Langella*, 804 F.2d 185, 189 (2d Cir. 1986), but that case is easily distinguished. Although the court held that "the Colombo Organized Crime Family of La Cosa Nostra" and "the Commission of La Cosa Nostra" were two different enterprises, it carefully explained that "the Commission" is an independent entity with a separate purpose from an individual family of La Cosa Nostra, such as the Colombo family. *Id.* As *Langella* recognized, "The indictment alleged that the Commission was a council of leaders of various organized crime families, 'an enterprise distinct from the individual Families,' established with the special purposes of, *inter alia*, resolving disputes among families and carrying out 'joint ventures' involving more than one family." *Id.* at 187. Indeed, the court signaled that it might feel differently about a case like ours:

> Although the Commission and the Colombo Family, in a sense, are vertically organized segments of an intricate, organized crime structure, the allegations of the two indictments sufficiently demonstrate that they are two separate and independent criminal enterprises. *Significantly, the Colombo Family is not merely a lower level of authority within the hierarchy of organized crime: Within its own sphere of operation, the Colombo Family is a self-sufficient enterprise that functions without oversight by the Commission.*

*Id.* at 189 (emphasis added). The patterns of racketeering charged also distinguish *Langella* from our case. The

*Langella* court began its comparison of the nature and scope of the racketeering charged in the two indictments by stating, "Here, there is *absolutely no overlap of any kind* between the patterns of racketeering activity alleged in the two indictments." *Id.* (emphasis added). No one asserts that the same is true here. As the government candidly conceded at oral argument, "There will be some overlapping proofs with respect to what was covered in the first case . . . ."

This court has already held, in *United States v. Thornton,* 972 F.2d 764 (7th Cir. 1992), that the government may not bring one narrow charge first and then later bring a broader charge that entirely encompasses the first one:

> The government has taken great pains to emphasize that the conspiracy alleged in the Pennsylvania indictment lasted only a few months, involved many fewer people, and was therefore much smaller in scope than the conspiracy alleged in the Illinois indictment, which involved some forty plus coconspirators, trafficking to numerous states, and encompassed a seven-to-nine-year time frame. Moreover, the government emphasized in the hearing before the district judge that the agent involved in the [narrower] Pennsylvania indictment knew nothing about the activities alleged in the [broader] Illinois indictment. It appears that in making such arguments the government is implying that even assuming that the Pennsylvania indictment charged the same conspiracy as the Illinois indictment, there is no double jeopardy problem because the first-charged conspiracy was only a small subset of the later-charged conspiracy and because the government did not know that this was one conspiracy. We must remember, however, the

> double jeopardy clause imposes limits on a defend-
> ant's criminal exposure. In order to stay true to these
> finality requirements, the government cannot repros-
> ecute a defendant for the same offense whenever it
> obtains broader evidence of criminal culpability.

*Id.* at 765. In my opinion, that is what the government is
trying to do here, insofar as the charges cover the same
time periods as those in the earlier indictments. That is
why the majority's bank robbery analogy is inapposite. In
that example, the government can certainly bring two
separate charges against the driver. But that is because the
driver's single act aided the commission of two separate
crimes: the robbery of Bank 1 and the robbery of Bank 2.
That analogy assumes the answer to the question before
us: whether the government is now charging these defen-
dants with new crimes for which they never stood trial, in
which some of the evidence that supported their earlier
conviction also underlies the new charges. My response
is that we do not have two distinct crimes analogous to the
two bank robberies. Instead, the indictments from the
previous cases are entirely subsumed within the new
indictment. The fact that the new indictment also lists
additional predicate acts does not change the fact that the
defendants are currently exposed to criminal liability for
crimes for which they have already served their punish-
ments. We have already noted that "[d]eciphering what
constitutes prosecution for the same offense for purposes
of double jeopardy is . . . even more difficult when we
move from single layered crimes such as bank robberies to
prosecution for multilayered crimes such as conspiracies
which expand over time and place. The reason for the
added complexity is that it is difficult to apply double
jeopardy's notions of finality to crimes which have no

easily discernable boundaries with regard to time, place, persons, and objectives." *Thornton*, 972 F.2d at 765 (citations omitted). Not a single case that has considered the double jeopardy issue in the RICO conspiracy context involving organized crime families has permitted an indictment that encompasses such a substantial portion of a prior one.

As the Supreme Court put it in *United States v. Turkette*, 452 U.S. 576 (1981), a RICO "enterprise" is an entity made up of "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583. A "pattern of racketeering activity" is "a series of criminal acts as defined by the statute." *Id.* Comparing the 2005 indictment with its 1992 and 1995 forebears, I conclude that the government is pursuing the same enterprise now as it did before. It has merely found broader evidence of criminal culpability and has added to the list of criminal predicate acts. The language of the 2005 indictment says as much, where it charges that "[t]he criminal activities of the Chicago Outfit were carried out in part by sub-groups, or 'crews,' which were generally given territories in different locations in the Chicago area." See also *United States v. DiDomenico*, 78 F.3d 294, 297-298 (7th Cir. 1996) ("The Chicago Outfit (the 'Outfit,' the 'Mob,' the 'Mafia')—the criminal enterprise whose most notorious boss was Al Capone—operates through 'street crews.' "); *id.* at 302 (noting, in a case charging twenty members of the "Ferriola Street Crew," and in which the indictment defined the enterprise as "The Joseph Ferriola Street Crew," that the district court was entitled to empanel an anonymous jury because "[t]his is not a case . . . in which the defendants are rumored to have 'Mob' connections. The defendants *are* the 'Mob.' " (emphasis in original)). The

indictment before us goes so far as to name both the Carlisi and the Calabrese Street Crews as subgroups of the Outfit. Borrowing from the majority's analysis, the structures of the enterprises charged in the earlier indictments are more closely analogous to a branch office or division of one company than they are to a distinct subsidiary.

While the new indictment alleges more predicate acts than the earlier ones, the overlaps are considerable. (Thus, we cannot say, as the *DeCologero* and *Langella* courts did, that "*all* of the [racketeering acts] in the present indictment are different from those charged in the [previous] case," 364 F.3d at 19 (emphasis in original), or "there is absolutely no overlap of any kind between the patterns of racketeering activity alleged in the two indictments," 804 F.2d at 189.) As I noted earlier, many of the predicate acts charged in the 2005 indictment are identical to those in the earlier indictments. Moreover, if one were to look at the various "factors" identified in *United States v. Marren*, 890 F.2d 924 (7th Cir. 1989), on which the government is content to rely, it is hard to resist the conclusion that these cases are about the same pattern of conduct. Those factors are "(1) the time of the various activities charged as separate patterns of racketeering; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge." *Id.* at 935. In the end, we must decide whether the area of overlap is so substantial that the two cases must be regarded as functionally the same. *United States v. Sertich,* 95 F.3d 520, 524 (7th Cir. 1996). With respect to the period of time covered by the earlier indictments, the

identity of the predicate acts is, in my view, easily great enough that we must find for the defendants on this part of the case too.

Although I would deny the defendants' request for outright dismissal of this indictment, I would grant their alternative petition for an order striking all of the averments in Count One that relate to the prior RICO conspiracy charges—that is, for Marcello the conspiracy that lasted from 1979 to 1990, and for Calabrese the conspiracy that went from 1978 to 1992. To that extent, I therefore dissent from the majority's judgment.

A true Copy:

        Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
