UNITED STATES of America, Plaintiff–Appellee,

v.

**Mark G. SERTICH, Defendant–Appellant.**

No. 95–1471.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1996.

Decided Sept. 4, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 30, 1996.

Diane L. Berkowitz (argued), Office of United States Attorney, Dyer, IN, for Plaintiff-Appellee.

Edith S. Thomas (argued), Brighton, MI, Clyde B. Pritchard, Farmington Hills, MI, for Defendant-Appellant.

Before CUMMINGS, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

On December 23, 1991, Mark Sertich pleaded guilty to conspiracy to evade federal excise tax pursuant to a plea agreement in the Central District of California. He was sentenced to 12 months in prison, a fine, and probation. On November 10, 1993, a week before the relevant statute of limitations expired, Sertich was indicted in the Northern District of Indiana for conspiring to evade federal excise taxes in a conspiracy that predated the California conspiracy. Sertich moved to dismiss the indictment on the

grounds it violated his fifth amendment right against double jeopardy, arguing that both charges stemmed from the same conspiracy to which he had already pleaded guilty and been sentenced. The district court found that the two conspiracies were separate, involved different schemes, separate people, separate time periods, and separate locations and denied Sertich's motion. We affirm.

## I.

The following facts are undisputed. Mark Sertich entered a plea agreement with the United States Attorney's Office for the Central District of California. He pleaded guilty to an indictment charging him with a single count of violating 18 U.S.C. § 371 (conspiracy to commit excise tax evasion). In doing so, Sertich admitted to participating in a "daisy chain" scheme to evade payment of federal excise taxes on diesel fuel. The indictment detailed such a scheme: one diesel fuel wholesale distributer (Company A) uses a legitimate IRS Form 637 registration for tax-free transactions to purchase fuel "tax free" from a legitimate refinery or another distributer holding an IRS Form 637. Company A then "sells" the fuel tax free to another company holding a fraudulently obtained Form 637 (Company B). Typically, Company B never takes physical possession of the fuel which, rather, is sold "tax paid" or "tax included" to legitimate diesel fuel retailers. Company B is a shell company which pockets rather than pays the excise taxes. When the IRS closes in on Company B, those involved simply disappear because Company B exists only on paper. Company B is typically referred to as a "burn" or "bust out" company.

The indictment charged that "[b]eginning on a date unknown to the Grand Jury and continuing to on or about October 11, 1991, within the Central District of California and elsewhere," Sertich along with Abram Egyazarov, Eugene Slusker, and Samuel Lehtzer, and others known (one of whom was later identified as Richard Allen) and unknown, conspired to defraud the United States by evading "federal diesel fuel excise taxes." The indictment charged that the daisy chain scheme used a petroleum wholesaler, Boland

Petroleum, Inc., to purchase diesel fuel tax free (in the role of Company A above) and sell that fuel to a shell company set up by the conspirators. Sertich admitted to concealing the scheme by creating and maintaining false records. The indictment charged overt acts, all occurring in California between July 15, 1991, and October 11, 1991.

The agreement under which Sertich pleaded guilty contained sentencing stipulations and an agreement that "this office" would not prosecute Sertich for "other offenses connected with the activities charged in the indictment, specifically, with respect to activities involving Richard Allen from approximately August 24, 1990 through October 11, 1991 within the jurisdiction of the Central District of California." The district court for the Central District of California accepted Sertich's plea of guilty and sentenced him to 12 months imprisonment, fined him six thousand dollars, and placed him on three years probation.

On November 10, 1993, one week before the statute of limitations would have run, a federal grand jury sitting in the Northern District of Indiana indicted Sertich on a charge of violating 18 U.S.C. § 371. The Indiana indictment charges that beginning "in or about October, 1986, through on or about November 17, 1987, in the Northern District of Indiana and elsewhere," Sertich conspired to defraud the United States by evading the collection of "federal motor fuel excise taxes." The indictment further charged that in April of 1987, Sertich met with a co-conspirator (later identified as Richard Allen) regarding a delinquent debt owed by Allen to Sertich. At the time, Allen owned and operated a company called Poly–Fuels, Inc. and Sertich owned and operated White Fuels, Inc. The two formed a plan to profit from exchanging diesel fuel for gasoline and illegally manipulating the federal and state motor fuel tax on each. Poly–Fuels subsequently "delivered tanker loads of diesel fuel to White Fuels in Detroit, Michigan, and returned to Chicago, Illinois, and Northwest Indiana with tanker loads of gasoline from White Fuels." According to the indictment, from April through November, 1987, White Fuels invoiced Poly–Fuels for

3,356,404 gallons of gasoline with federal excise tax excluded, but delivered only 2,485,148 gallons. From July through October, 1987, White Fuels purchased 884,693 gallons of diesel fuel from Poly–Fuels and included 15.1 cents per gallon excise tax in the price. Sertich never paid the federal excise taxes; they were included on the invoice so that White Fuels could take a credit on its federal excise tax returns for the payments. While perhaps confusing, the indictment charges, and the government presumably is convinced it can prove, that the scheme netted Sertich and his co-conspirators approximately $346,000 in evaded motor fuel excise taxes from April to November 17, 1987.

The government has yet to prove any of these Indiana charges. Sertich challenged the second indictment through a motion to dismiss for violation of double jeopardy in the Northern District of Indiana and a motion to enforce the nonprosecution paragraph of the plea agreement in the Central District of California. Each district court denied Sertich's motion. He appealed both. The United States Court of Appeals for the Ninth Circuit affirmed the Central District's denial of his California motion. *United States v. Sertich*, 69 F.3d 545 (table), 1995 WL 623745 (9th Cir.1995). We review the Northern District's denial of his Indiana motion. This is a legal question which we review de novo. *United States v. Furlett*, 974 F.2d 839, 842 (7th Cir.1992).

## II.

■ When a district court denies a defendant's pretrial motion challenging an indictment on double jeopardy grounds, the denial is immediately appealable as a "final order." *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977). Sertich has advanced two arguments supporting his double jeopardy claim. First he argues, broadly, that he was involved with Allen (the unnamed conspirator common to both indictments) in one extended conspiracy to evade federal fuel excise taxes and that after pleading guilty to that conspiracy in California, the United States may not divide the one conspiracy into two and prosecute him again in Indiana. Second, he argues the

sentence he received for his California guilty verdict was longer than the sentences received by the other California conspirators because his sentence was based on tax losses that included the losses from the Indiana conspiracy as well as the California conspiracy.

## A.

■ Sertich's primary argument is that the federal prosecutors in Indiana and California carefully divided a single conspiracy into two. To support this position, Sertich argues that he and Allen were primary players in both schemes. Irrespective of the methods employed, the conspiracy's objective was to make money through fuel excise tax fraud and its purpose was to pay off a pre-existing business debt Allen owed to Sertich. Sertich argues that rather than two discrete criminal enterprises, the Indiana conspiracy continued straight through and into the California conspiracy. Even when he and Allen were not actually running a fuel excise tax evasion scheme (in Indiana) they were plotting their next (in California) through a series of meetings that covered what might otherwise appear to be the two-year hiatus between November 1987 when the Indiana operation shut down and late 1990 when he joined Allen's new California company. Sertich argues further that each indictment charged the same statutory offense, conspiracy to evade federal fuel excise taxes. Both indictments charge conspiracies involving other persons, places, and dates "unknown," acknowledging that each was more extensive than specified by the overt acts. Finally, Sertich argues the federal investigation carefully crafted the evidence before the grand juries, and carefully worded the indictments and plea agreement so as to improperly suggest the existence of two conspiracies.

■ The prosecution of a single conspiracy as two separate conspiracies violates a defendant's right not to twice be tried for the same offense. *Braverman v. United States*, 317 U.S. 49, 52–54, 63 S.Ct. 99, 101–02, 87 L.Ed. 23 (1942); *United States v. Dortch*, 5 F.3d 1056, 1061 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1077, 127 L.Ed.2d

394 (1994). A defendant claiming that a second prosecution subjects him to double jeopardy "bears the burden of establishing that both prosecutions are for the same offense." *United States v. Chiattello*, 804 F.2d 415, 418 (1986). The defendant must set out a prima facie case that the second indictment charges the same offense for which he has already been convicted. The burden then shifts to the government to demonstrate that the indictments are for separate offenses. *Dortch*, 5 F.3d at 1060. *United States v. Stricklin*, 591 F.2d 1112, 1117–18 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). The government must prove by a preponderance of the evidence that the two indictments charge different crimes. *United States v. Kalish*, 690 F.2d 1144, 1152 (5th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *cf. United States v. Verrusio*, 803 F.2d 885, 895 (7th Cir.1986) (citing *Kalish*; equating government's burden in breach of plea challenge to that in double jeopardy challenge, i.e., preponderance of the evidence). In this case, the district court ruled that Sertich had met his burden of alleging a prima facie case of double jeopardy. We need not address the sufficiency of the prima facie case where, as here, the district court has determined that based on a preponderance of the evidence, evidence submitted by both the defendant as well as the government, the indictments cover distinct conspiracies. Instead, we review the court's ruling based on all the evidence available to it to determine, *de novo*, whether the preponderance of the evidence points to two conspiracies or only one.

■ Traditionally we determine whether two indictments are for the same offense by considering whether the same evidence required to prove one would have been suffi-

cient to prove the other. But conspiracy cases are more involved. *United States v. Castro*, 629 F.2d 456, 461 (7th Cir.1980); *Dortch*, 5 F.3d at 1061. To determine whether the two charges arise out of one conspiracy, the court must look to such factors as whether they involve the same overt acts, people, places, or time period; whether they share similar objectives or modus operandi; or whether the two conspiracies depend upon each other for success. *Dortch*, 5 F.3d at 1061, *United States v. Thornton*, 972 F.2d 764 (7th Cir.1992), *Chiattello*, 804 F.2d at 418, *Castro*, 629 F.2d at 461. While we have stated that "[w]here several of these factors are present, the conclusion follows that the alleged illegal combinations are not separate and distinct offenses," *Castro*, 629 F.2d at 461, we have also held that some factors are at times more telling than others. *See Chiattello*, 804 F.2d at 419 (same statutory offense and same time period "far from sufficient" to establish one conspiracy), *Dortch*, 5 F.3d at 1062 ("we do not find the alleged time overlap particularly significant"), and 1063 (fact that two indictments charged same statutory offense "weakest evidence" in support of argument). As a result we do not just tabulate similarities or dissimilarities, rather we look to how extensive is the overlap. *Dortch*, 5 F.3d at 1062. The test is ultimately one of "totality of the circumstances." [1]

■ An overlap or proximity in time frame may at times be relevant to a determination of whether one or two conspiracies exist, however we have also held that in some instances two separate conspiracies can occur simultaneously. *Chiattello*, 804 F.2d at 419. Here two years separated the two criminal enterprises. While we do not disregard Sertich's evidence that he and Allen conversed and met during this time frame, Sertich has

---

1. Many of the circuits examining what we in *Castro* and other cases have described as "factors" to consider have described the test as one of "totality of the circumstances." *See, e.g. United States v. Reiter*, 848 F.2d 336, 340 (2d Cir. 1988); *United States v. Ciancaglini*, 858 F.2d 923, 927 (3d Cir.1988); *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir.1986); *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 831 (1987); *United States v.*

*Darden*, 70 F.3d 1507, 1518 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996); *United States v. Sasser*, 974 F.2d 1544, 1550 (10th Cir.1992), *cert. denied*, 506 U.S. 1085, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993). We have gone so far as to equate our "factor" test with the totality of the circumstances test in *Ciancaglini*. *United States v. Marren*, 890 F.2d 924, 935 (7th Cir.1989). Whatever the label, the tests are one and the same.

described a personal friendship as well as a business association. Such meetings are therefore not in themselves particularly probative. Even if they did discuss another criminal excise tax avoidance scheme, however, the break in time between the two schemes coupled with the entirely different methods the Indiana and California enterprises employed for evading taxes points just as much to a discussion of a new scheme as to a continuation of the old scheme. Even if the California conspiracy had employed the same method as that in Indiana (which it did not), that fact would not insulate Sertich. His argument suggests that an indictment for conspiring to engage in one particular crime insulates a defendant from indictment for additional conspiracies to commit the same crime. This argument defies common sense, for a criminal successful with one crime would seem likely to repeat it rather than to undertake an entirely new and unfamiliar enterprise. More significantly, the case law has rejected the same theory. "[T]he guarantee against double jeopardy does not insulate a criminal from punishment for subsequent offenses merely because he chooses to continue committing the same type of crime." *Dortch,* 5 F.3d at 1063, quoting *United States v. West,* 670 F.2d 675, 681 (7th Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). To hold otherwise would reward those who could most broadly describe the objective of their criminal endeavors. Broadly defined conspiratorial objectives thus do not control our determination.

The same holds true for the underlying "purpose" of the conspiracies alleged by Sertich: to pay off a debt owed to Sertich by Allen. Sertich argues the debt means the first conspiracy never "divided the spoils." While the debt provides a motive for Allen's participation it provides little insight into whether the conspiracies were actually one. Allen was paying off his debt by permitting Sertich to make money off him. The first venture's proceeds were credited towards Al-

len's debt. There was no loot left to divide— the characteristic of the usual "divide the spoils case." Further, the debt was preexisting and unrelated to either charged conspiracy. Had Allen and Sertich also conspired to rob a bank or sell narcotics, the existence of the debt would provide scant evidence that the conspiracies were actually related. A criminal, after all, can engage in many conspiracies where his underlying motive is to "make money," whatever the use to which he may ultimately plan to put that money. That broad motive does not define the relationship between the conspiracies.

The record evidence indicates the Indiana conspiracy involved Sertich and Allen as the primary players, operating a scheme in which their wholly owned firms, Poly–Fuels, Inc. (Allen) and White Fuels, Inc. (Sertich), swapped fuel and falsified tax documentation, relying on the lack of cooperation between taxing authorities in Indiana, Illinois, and Michigan to evade excise taxes and thus generate additional net revenue. The operation came to a halt in November 1987 when the authorities raided and searched White Fuels. Sertich did not join Allen's new California company, Mark Diamond, Inc., until late 1990. In the interim, Sertich worked as a salaried employee for his brother-in-law's Michigan fuel company, Gruber Enterprises, until May or June of 1988, and as a construction manager in Florida from the spring of 1990 through August of the same year. Thus, during the two years that separated the two criminal enterprises Sertich engaged in business activities unrelated to Allen, to tax avoidance schemes, or, in the case of the Florida job, to the fuel business altogether.

Sertich and Allen were the primary conspirators in Indiana involving a scheme for swaps between two legitimate fuel companies they each owned. In California, however, they worked for Egyazarov (who by May of 1991 had taken over Mark Diamond, Ltd., from Allen[2]). Sertich thereafter aided Egyazarov in the purchase and illegal operation of Boland Petroleum. Sertich was not a

---

**2.** In May of 1991 Allen was forced at gunpoint to sign Mark Diamond over to Egyazarov, who along with Slusker ran the company thereafter as Mark Investments, Inc. Allen became an involuntary "employee" of his own firm. Sertich continued to work for the new "owners." After he was physically beaten by Slusker and Egyazarov, Allen went to the police and became an informant, precipitating the eventual arrest of Sertich and the others.

major player or decisionmaker in California. Rather, he admitted to simply being in charge of the paperwork necessary for setting up the "burn" companies and "selling" fuel tax-free to those companies. This role was quite different from the one he had in the Indiana conspiracy.

Although both indictments contained the boilerplate language "and elsewhere," there is no evidence whatsoever that any overt acts, much less those charged in each indictment, took place outside the states specified. The California conspiracy involved actions taking place solely within California. The Indiana conspiracy involved swaps of fuel between, and tax avoidance in, Indiana, Michigan, and Illinois. While White Fuels was a California company, and Allen a California resident, neither the indictments nor Sertich provide any evidence that any overt acts in furtherance of the Indiana conspiracy took place in California. Thus, there is no overlap in location between the two conspiracies.

Finally, perhaps the most important factor in distinguishing between the existence of one or more than one conspiracy is whether the two conspiracies depend on each other for their success. *Dortch*, 5 F.3d at 1063. Here they did not. Neither conspiracy had anything to do with the other. Each stood on its own in time, place, and method. Each operation could have taken place, and in fact did take place, independently of the other, and each operation's success or failure was independent of the other's.

Based on the totality of the circumstances in this case, the evidence demonstrates by a preponderance of the evidence two distinct conspiracies rather than one overarching conspiracy. Sertich's claim that the government carefully crafted the indictment and the evidence to make one conspiracy look like two is unfounded. There is nothing wrong with the government's efforts to avoid overlapping charges and evidence that could raise a claim for double jeopardy. The prosecutors were no doubt aware of the possibility of such a challenge given the fact that Sertich and Allen were involved in each operation.

## B.

█ Sertich also claims he has already been punished for the Indiana conspiracy.

He contends his twelve-month prison sentence was based on a Sentencing Guideline computation for tax losses from both the California and the Indiana tax avoidance schemes. It could be true; we are not in a position to know. The presentence report from California indicates Sertich possessed a criminal history category of II. The report also computes a base offense level derived from the tax tables in Section 2T4.1 corresponding to the tax loss. While the report indicates Sertich's plea agreement admitted a $200,000 tax loss, which would result in a base offense level of 14, because no evidence indicated Sertich was liable for more than the others the probation office recommended adopting a loss of $70,000, the same as attributed to each of Sertich's California codefendants. Section 2T4.1 assigns an offense level of 11 to a $70,000 tax loss. This yields a total offense level of 9 after a two-level reduction for acceptance of responsibility. The resulting sentencing range (with criminal history II) would be 6–12 months. Alternatively, had the court accepted the base offense level derived from the $200,000 tax loss admitted in the plea agreement, it would have arrived at a total offense level of 12 after the acceptance of responsibility deduction. That would yield 12–18 months. Thus, the court might have sentenced Sertich for a $200,000 loss and selected the sentence at the low end of the range, or it may have accepted the probation office recommendation and sentenced Sertich to the high end of the range.

█ We do not know what the district court in California did. Sertich never raised this argument until his appellate reply brief. As a result, neither the district court in Indiana nor opposing counsel had an opportunity to address the argument, and the record is devoid of the relevant facts, transcripts, or documents to consider the question. Arguments not raised to the district court are forfeited and will only be reviewed for plain error. *United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 541, 133 L.Ed.2d 444 (1995), *United States v. Olano*, 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). We have repeatedly stated that arguments raised on appeal for the first time in a reply brief

violate Seventh Circuit Rules. *See, e.g., Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990); Circuit Rule 28(f) (reply brief limited to matters in reply). And we have repeatedly stated we will not consider such arguments. *Snider v. Consolidation Coal Co.,* 973 F.2d 555, 561 (7th Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993); *Wilson,* 895 F.2d at 384. The same is true for arguments not fully developed or not supported by pertinent authority. *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991) *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); Fed.R.App.P. 28(a)(6). Neither case cited by Sertich in his reply brief to support his belated argument is pertinent; each has been explicitly rejected by this circuit. *See United States v. Duarte,* 28 F.3d 47, 48 (7th Cir.1994), *United States v. Brown,* 31 F.3d 484, 496, n. 19 (7th Cir.1994). While under certain compelling circumstances we will consider issues otherwise forfeited or waived, *see, e.g. United States v. Wilson* 962 F.2d 621, 627 (7th Cir.1992) (remand of egregious sentencing error compelled despite parties' oversight of issue), this case presents no such compelling circumstance.

Accordingly, the district court's order denying Sertich's Motion to Dismiss for Violation of Double Jeopardy is AFFIRMED.