COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2296-CR**

Cir. Ct. No. **2011CF924**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BILLY JOE CANNON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1 DONALD, J. Billy Joe Cannon appeals from a judgment convicting him of conspiracy to deliver cocaine as a second and subsequent offender, conspiracy to possess with the intent to deliver marijuana as a second and subsequent offender, and furnishing a firearm to an unauthorized person as a party

to a crime. Cannon also appeals an order denying his postconviction motion. Cannon argues that the conspiracy to deliver cocaine charge violates his constitutional rights against double jeopardy and that the wiretap recordings used to convict him of furnishing a firearm to an unauthorized person should have been suppressed. We reject his arguments and affirm.

## BACKGROUND

¶2 In 2009, the State charged Cannon with three counts: (1) conspiracy to deliver cocaine in an amount greater than forty grams on November 10, 2005, as a party to a crime; (2) possession of a firearm by a convicted felon on October 16, 2008; and (3) furnishing a firearm to a convicted felon on October 16, 2008, as a party to a crime. The conspiracy charge was severed from the two firearm charges for the purposes of trial.

¶3 In 2011, Cannon went to trial on the conspiracy charge.[1] At trial, the State alleged that Cannon was part of a conspiracy to deliver cocaine on November 10, 2005, involving cocaine supplier "Hot Rod" Smith and Cannon's customers, Jerald McGhee and Lamont Powell, at Cannon's rental property on 47th Street in Milwaukee. The jury found Cannon not guilty. Subsequently, Cannon entered a guilty plea to the possession of a firearm by a convicted felon charge and the furnishing a firearm to a convicted felon charge was dismissed and read in.

¶4 Approximately six weeks after the trial on the conspiracy charge, the State filed new charges against Cannon. The charges were as follows:

---

[1] The Honorable Michael Guolee presided over Cannon's first trial.

2

(1) conspiracy to deliver cocaine in an amount greater than forty grams "between on or about March 4, 2008 and on or about March 24, 2008," as a party to a crime; (2) one count of conspiracy to possess THC in an amount greater than 10,000 grams "between on or about February 2008 and on or about October 2008," as a party to a crime; and (3) one count of knowingly furnishing a firearm to a convicted felon "on or about Thursday, April 3, 2008," as a party to a crime.[2]

¶5 Pre-trial, Cannon filed a number of motions including a motion to dismiss the new conspiracy charge as a violation of Cannon's right to be free from double jeopardy and a motion to suppress wiretap evidence. The circuit court rejected both challenges.

¶6 In 2014, Cannon went to trial on the new charges.[3] Pertinent to this appeal, at trial, the State argued that beginning on March 4, 2008, and ending around March 24, 2008, at Cannon's house on Nash Street in Milwaukee, Cannon was a member of a conspiracy to deliver cocaine involving cocaine supplier Eraclio Varala[4] and customer Damone Powell.[5] The State also argued that Cannon arranged for the transfer of a firearm to Jimmy Hayes through two convicted felons, Anthony Turnage and Carl Page. A jury found Cannon guilty as charged.

---

[2] A second and subsequent offender penalty enhancer was later added to counts one and two. The party to a crime designation on counts one and two were stricken at the conclusion of the trial.

[3] The Honorable Stephanie Rothstein presided over Cannon's second trial and decided his postconviction motion.

[4] The record contains different spellings of Eraclio's last name, "Varala." We use the spelling Eraclio provided during the trial.

[5] Damone Powell is a different person from Lamont Powell, who testified at the first trial.

3

Cannon was sentenced to a total of sixteen years of initial confinement followed by fourteen years of extended supervision.

¶7 Postconviction, Cannon moved for a new trial. The circuit court ordered all postconviction documents to be filed under seal. After briefing, the circuit court denied Cannon's motion without an evidentiary hearing. The circuit court rejected Cannon's renewed double jeopardy challenge to the 2011 conspiracy charge concluding that "the offenses may have been the same, but they were not the same in fact[.]" Additionally, the circuit court rejected Cannon's argument that trial counsel was ineffective for failing to sufficiently argue for suppression of the wiretap recordings of the firearm transaction.

¶8 This appeal follows. Additional relevant facts will be referenced below.

**DISCUSSION**

**I.    Double Jeopardy Violation**

¶9 Cannon argues that his right to be free from double jeopardy was violated because the 2009 conspiracy charge and the 2011 conspiracy charge were actually a single "continuous conspiracy" to deliver cocaine. In support, Cannon emphasizes that both charges stem from a single investigation, which was completed prior to his first trial. The issue, however, is not whether there was a single investigation, but whether there was a single conspiracy. We conclude that there was not a single conspiracy. Rather, we agree with the State that Cannon was involved in two separate and distinct conspiracies.

¶10 The double jeopardy clause in the United States Constitution states that no person shall "be subject for the same offence to be twice put in

jeopardy[.]" U.S. CONST. amend. V. Likewise, the Wisconsin Constitution provides that "no person for the same offense may be put twice in jeopardy of punishment[.]" WIS. CONST. art. I, § 8. The United States and Wisconsin double jeopardy clauses are identical in scope and purpose. ***State v. Davison***, 2003 WI 89, ¶18, 263 Wis. 2d 145, 666 N.W.2d 1.

¶11 Whether a defendant's constitutional right to be free from double jeopardy has been violated is a question of law that we review *de novo*. ***State v. Harris***, 190 Wis. 2d 718, 722, 528 N.W.2d 7 (Ct. App. 1994).

¶12 To determine whether a double jeopardy violation has occurred, the State argues that we should apply ***Blockburger v. United States***, 284 U.S. 299 (1932). Pursuant to the ***Blockburger*** test, two prosecutions violate the double jeopardy clause when the offenses are "identical in the law and in fact." *See **State v. Schultz***, 2020 WI 24, ¶22, 390 Wis. 2d 570, 939 N.W.2d 519 (citation omitted).

¶13 The State here concedes that the 2009 conspiracy charge and the 2011 conspiracy charge are identical in law. We agree with the State's concession and turn to the second part of the ***Blockburger*** test—whether the charges are identical in fact.

¶14 "Offenses are not identical in fact when 'a conviction for each offense requires proof of an additional fact that conviction for the other offense[] does not.'" ***Schultz***, 390 Wis. 2d 570, ¶22 (citation omitted). Offenses also are not identical in fact when "they are different in nature or separated in time." ***Id.***

¶15 To support his argument that his right to be free from double jeopardy was violated, Cannon argues that a "strict application of the factual inquiry under ***Blockburger*** [is] inappropriate" and we should look at the analysis

in double jeopardy cases involving conspiracies, such as *United States v. Castro*, 629 F.2d 456 (7th Cir. 1980).

¶16    We agree with Cannon that *Castro* is instructive in this case, but we conclude that Cannon does not prevail under *Castro*.  In *Castro*, the Seventh Circuit stated that to determine whether a conspiracy has been subdivided arbitrarily, courts should look to "both the indictments and the evidence and consider such factors as whether the conspiracies involve the same time period, alleged co-conspirators and places, overt acts, and whether the two conspiracies depend on each other for success." *Id.* at 461.  Subsequent Seventh Circuit cases have also looked at whether two charges "share similar objectives or modus operandi[,]" and note that when evaluating the factors, a totality of the circumstances test is used. *See e.g.*, *United States v. Sertich*, 95 F.3d 520, 524 (7th Cir. 1996).  Additionally, in a post-trial double jeopardy review, "the defendant alone bears the burden[.]" *United States v. Dortch*, 5 F.3d 1056, 1060 (7th Cir. 1993).

¶17    In *United States v. Thornton*, the Seventh Circuit also indicated that,

> [d]eciphering what constitutes prosecution for the *same offense* for purposes of double jeopardy is not an easy task. And, the Supreme Court and this court have recognized that this task becomes even more difficult when we move from single layered crimes such as bank robberies to prosecution for multilayered crimes such as conspiracies which expand over time and place. The reason for the added complexity is that it is difficult to apply double jeopardy's notions of finality to crimes which have no easily discernable boundaries with regard to time, place, persons, and objectives.

*Id.*, 972 F.2d 764, 765 (7th Cir. 1992) (citations omitted).

¶18    In *Thornton*, the court then stated that,

6

> [i]n *Castro* we held that the double jeopardy clause prohibits the government from arbitrarily subdividing one conspiracy into several and then prosecuting a person multiple times for what essentially constitutes one conspiracy. The rationale underlying this proposition is simple: the double jeopardy clause prohibits multiple prosecutions for the *same offense,* and because the agreement is the *sine qua non* of conspiracy, if the government twice prosecutes an individual under the same statute for what essentially constitutes one agreement, this must constitute prosecution for the same offense in violation of double jeopardy.

*Id.* at 766 (citation omitted).

¶19     Here, an examination of the totality of the circumstances does not support the existence of a single continuous conspiracy. While the 2009 conspiracy charge and the 2011 conspiracy involved a similar overt act (a cocaine transaction),[6] the remainder of the factors do not support the existence of a single continuous conspiracy.

¶20     First, there is not an overlap in dates between the two conspiracy charges. The 2009 charge alleged that a conspiracy took place on November 10, 2005, whereas the 2011 charge alleged that a conspiracy took place from approximately March 4, 2008, to March 24, 2008. *See* **Dortch**, 5 F.3d at 1062

---

[6] At Cannon's second trial, evidence was also elicited that Cannon was involved in selling marijuana. For example, Varala testified that he supplied Cannon with both marijuana and cocaine. However, because Cannon was charged separately for conspiracy to deliver marijuana and because the conspiracy charge at issue here focused on cocaine, we give Cannon the benefit on this factor.

(observing that the court has "found a single conspiracy only when the dates charged in the indictments actually overlapped").[7]

¶21 Second, the charges involved different co-conspirators. The 2009 conspiracy charge allegedly involved cocaine supplier "Hot Rod" Smith and customers Jerald McGhee and Lamont Powell. The 2011 conspiracy charge involved supplier Eraclio Varala and customer Damone Powell. Moreover, at the second trial, Varala testified that he started selling drugs to Cannon in 2008, which supports the existence of a second and separate conspiracy.

¶22 Cannon asserts that "McGhee was a common member fully implicated in both alleged conspiracies," but "the prosecutor left him out of both (out of the first conspiracy, presumably because he cooperated, and out of the second conspiracy, presumably to avoid the double jeopardy problem)." Cannon, however, does not present any evidence that McGhee was involved in the transaction with Damone Powell. Further, even if McGhee was implicated in both conspiracies, minimal overlap among defendants is insufficient to establish a single conspiracy. *See id.*

¶23 Third, the location of the charges does not persuade us that a single conspiracy took place. The 2009 conspiracy charge was alleged to have occurred at Cannon's rental property on North 47th Street in the City of Milwaukee. The 2011 conspiracy charge, however, took place at Cannon's residence on Nash

---

[7] Cannon observes that the 2009 conspiracy charge was accompanied by two firearm charges relating to conduct on October 16, 2008. This however is irrelevant. Cannon did not go to trial on the firearm charges. He entered a guilty plea to the possession of a firearm by a convicted felon charge and the furnishing a firearm to a convicted felon charge was dismissed and read in.

Street in the City of Milwaukee. Although both charges took place in Milwaukee, Milwaukee is large enough for more than one conspiracy to distribute cocaine to exist. *See id.* at 1062-63 (concluding "[t]he greater St. Louis area is certainly large enough to be home to more than one conspiracy to distribute cocaine").

¶24 Finally, and most significantly, Cannon does not establish that the two conspiracies shared similar modus operandi or depended on each other for success. *See id.* at 1063 (observing that courts have "paid the most attention … [to] whether the two conspiracies depended on each other for success").

¶25 To support his argument that there was a single conspiracy, Cannon refers to an October 2008 statement he made to the police that the last time he dealt drugs with Hot Rod was in 2005 or 2006. Cannon argues that this statement "projected the conspiracy forward into 2006." This statement, however, does not support the existence of a single conspiracy. Rather, Cannon's statement supports that the first conspiracy ended in 2005 or 2006. Thus, based on the totality of the circumstances, we are not persuaded this was a single continuous conspiracy.

¶26 Lastly, Cannon argues that the State was barred from prosecuting him a second time "under the principles of issue preclusion[.]" "Issue preclusion, formerly known as collateral estoppel, limits the relitigation of issues that have been actually decided in a previous case." *State v. Miller*, 2004 WI App 117, ¶19, 274 Wis. 2d 471, 683 N.W.2d 485. Cannon bears the burden to establish that issue preclusion applies. *Id.* This defense "is not often available to an accused, for it is difficult to determine, especially in a general verdict of acquittal, how the fact finder in the first trial decided any particular issue." *State v. Vassos*, 218 Wis. 2d 330, 344, 579 N.W.2d 35 (1998).

9

¶27     We conclude that issue preclusion does not apply under the facts of this case. As discussed above, we do not find that there was a single conspiracy, but two separate and distinct conspiracies. At the first trial, the jury acquitted Cannon of the November 10, 2005 conspiracy. The jury did not decide whether Cannon was guilty of the conspiracy beginning on March 4, 2008, and ending around March 24, 2008. *See **Currier v. Virginia***, 585 U.S. ___, 138 S. Ct. 2144, 2150 (2018) (stating that a second prosecution is barred "only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial"). Thus, we find that Cannon has failed to meet his burden that the State was precluded from charging him with conspiracy to deliver cocaine beginning on March 4, 2008, and ending around March 24, 2008.

## II.     Suppression of the Wiretap Recordings

¶28     WISCONSIN STAT. § 968.28 (2019-20)[8] allows law enforcement to apply for a court order authorizing the interception of wire, electronic, or oral communications for certain enumerated offenses, including "dealing in controlled substances or controlled substance analogs[.]" If while executing a wiretap, police discover evidence relating to another crime not enumerated in the warrant, pursuant to WIS. STAT. § 968.29(5), they must obtain approval to use that evidence in later proceedings.

¶29     Police obtained a warrant to wiretap Cannon's phone. The warrant, signed by Chief Judge Kitty Brennan, authorized police to intercept calls on the

---

[8] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

grounds that probable cause existed to believe Cannon was engaged in drug dealing. On April 3, 2008, police intercepted calls in which Cannon arranged for the transfer of a firearm through a known felon, Carl Page, to Jimmy Hayes. Pursuant to WIS. STAT. § 968.29(5), police obtained a supplemental warrant from Judge Richard Sankovitz, authorizing the use of evidence of the firearm transaction in later proceedings.

¶30    Cannon makes four arguments as to why the wiretap recordings should have been suppressed. We disagree and address each of his arguments in turn.[9]

¶31    First, Cannon challenges the supplemental warrant authorizing the use of the firearm transaction evidence in later proceedings because it was issued by Acting Chief Judge Richard Sankovitz,[10] not Chief Judge Kitty Brennan, who issued the original warrant.

¶32    WISCONSIN STAT. § 968.29(5) provides that "the contents thereof, and evidence derived therefrom," may be used "when authorized or approved by the judge who acted on the original application …." While the statute refers to the

---

[9] The State argues that Cannon's wiretap claims were forfeited and should be analyzed under the ineffective assistance of counsel rubric. *See* ***Strickland v. Washington***, 466 U.S. 668 (1984). In his reply brief, Cannon responds that his claims should not be deemed forfeited because his failure to object was due to the State's failure to disclose all the wiretap documentation until the postconviction proceedings in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). As discussed below, we conclude that Cannon's claims do not have merit. Accordingly, as both the State and Cannon observe, any ineffective assistance of counsel argument would also fail. ***State v. Berggren***, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (holding that counsel cannot be ineffective for not pursuing what would have been a meritless suppression motion).

[10] The supplemental warrant contains hand writing that crossed off "the Honorable Kitty K. Brennan" and inserts the word "Acting" in front of "Chief Judge, First District."

"judge who acted on the original application," Cannon overlooks that the Wisconsin Supreme Court Rules authorize the chief judge to "assign an active judge" of the district "to substitute for the absenting judge." SCR 70.23(2). This rule does not prohibit the chief judge from assigning another judge to take over his or her place. Thus, Cannon's argument that Judge Sankovitz lacked authority to sign the supplemental warrant fails.

¶33 Second, Cannon argues the State failed to produce any order authorizing the use of the calls intercepted on two dates, April 4th or April 5th. Assuming for the sake of argument that the calls on those dates were not authorized, any error was harmless. *See **State v. Harris***, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397 (stating that erroneously admitted evidence is subject to the harmless error rule).

¶34 At trial, both Page and Turnage testified regarding the details of the firearm transfer to Hayes. In addition, the jury also heard the April 3, 2008 calls setting up the firearm transaction, and Cannon's statements to the police and at trial admitting that he knew Page and Turnage were convicted felons when he arranged the transfer of the firearm through them to Hayes. Thus, we conclude, beyond a reasonable doubt, that a jury would have found Cannon guilty absent any error. *See **State v. Harvey***, 2002 WI 93, ¶48 n.14, 254 Wis. 2d 442, 647 N.W.2d 189 ("[I]n order to conclude that an error 'did not contribute to the verdict' … a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (citation omitted)).

¶35 Third, Cannon argues that the affidavit accompanying the supplemental warrant authorizing the use of the firearm transaction evidence in later proceedings lacked probable cause. However, even if probable cause did not

exist, we agree with the State that suppression is not warranted due to the good faith exception.

¶36 Generally, evidence obtained in violation of the Fourth Amendment is excluded. *State v. Scull*, 2015 WI 22, ¶20, 361 Wis. 2d 288, 862 N.W.2d 562. However, there are exceptions to the exclusionary rule, such as when police act in good faith or in objectively reasonable reliance on a warrant that is later found to be invalid. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984).

¶37 When a warrant is not supported by probable cause, police act in good faith reliance on the warrant if there is sufficient "indicia" of probable cause. *State v. Marquardt*, 2005 WI 157, ¶¶24-29, 286 Wis. 2d 204, 705 N.W.2d 878. The standard for "indicia" is less demanding and "requires sufficient signs of probable cause, not probable cause per se." *Id.*, ¶37. Any competing inferences are to be resolved in favor of the State. *Id.*, ¶44.

¶38 In this case, the original wiretap application was approved by the attorney general and the district attorney and then by Chief Judge Brennan. The supplemental application was reviewed and signed by the district attorney and then submitted to Judge Sankovitz for approval. The affidavit at issue averred that a person named "Jimmy" asked Cannon for a gun, Cannon was a convicted felon, convicted felon Page agreed to assist Cannon's request for a gun, and that Page had two guns. Judge Sankovitz found that there was sufficient information to authorize the use of the firearm transaction evidence. Under these circumstances, the officers who received the authorization to use the firearm evidence could not be expected to question the probable cause determination. Based on the facts in

13

the affidavit, we conclude that there was a sufficient indicia of probable cause and that the good faith exception applies.[11]

¶39 Finally, Cannon argues that WIS. STAT. § 968.29(5) does not authorize the interception of any communications regarding firearms. Again, we disagree. As the State asserts, police may use information about other criminal activity that they inadvertently intercept while lawfully conducting an authorized wiretap. *See* ***State v. Gil***, 208 Wis. 2d 531, 544-46, 561 N.W.2d 760 (Ct. App. 1997). Additionally, as stated above, the plain language of § 968.29(5) provides that when an officer intercepts communications "relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used" with judicial approval. Accordingly, here, the police, who were conducting a lawfully authorized wiretap, were not barred from intercepting and using the firearm communications.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

---

[11] In Wisconsin, to apply the good faith exception, the State must also show that the process used for obtaining the search warrant included significant investigation and "a review by a police officer trained in, or very knowledgeable of, the legal vagaries of probable cause and reasonable suspicion, or a knowledgeable government attorney." ***State v. Eason***, 2001 WI 98, ¶63, 245 Wis. 2d 206, 629 N.W.2d 625. The State observes in its response brief that in this case there was a "lengthy investigation involving many actors" and both the initial application and supplemental application were reviewed by a government attorney. Cannon does not contest the satisfaction of these requirements in his reply brief, and thus, we deem them conceded. *See* ***United Co-op. v. Frontier FS Co-op.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (finding that the failure to refute a proposition in a response brief may be taken as a concession).